

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|                              | § |                              |
| :--------------------------- | :-: | :--------------------------- |
| IN RE:                       | § | No. 08-22-00081-CV           |
|                              | § |                              |
| KENNETH MICHAEL HULLABY,     | § | AN ORIGINAL PROCEEDING       |
|                              | § |                              |
| Relator.                     | § | IN MANDAMUS                  |
|                              | § |                              |

## CONCURRING AND DISSENTING OPINION

I concur in part and respectfully dissent in part. I concur with the majority opinion to the extent it denies relief on the basis that the 383rd District Court has yet to rule on the jurisdictional conflict presented by Relator Kenneth Hullaby's motion to dismiss/plea to the jurisdiction. However, to the extent the Court's decision implicitly concludes that the record does not support a partial grant of mandamus relief, I respectfully dissent.

In seeking relief, Hullaby complains of "an unlawful order," rendered on April 29, 2022 (the April 29 order), contending it "retroactively" conferred managing conservatorship status without a hearing. Unlike the majority, I would also address this complaint, as I view it as being fairly included within the breadth of the issue presented in Hullaby's petition for writ of mandamus. *See* TEX. R. APP. P. 52.3 (f).

1

In doing so, I would conclude the record establishes the April 29 order is void and unenforceable as a matter of law due to its failure to afford due process to a necessary party, and due to its procedural deficiency. As a presumed father, Hullaby was entitled to receive service of process of the termination/adoption suit filed by the Barringtons, as well as notice of any hearing for temporary orders set in the case. Those are constitutional and procedural requirements imposed on a suit of this nature. The record shows, however, the district court awarded temporary conservatorship status to the Barringtons, by its rendering of the April 29 order, based on a temporary orders hearing held without notice to Hullaby. Because no governmental entity is involved in this termination/adoption suit, the Family Code expressly prohibits such an appointment of temporary conservatorship without notice to each parent. And constitutional protections were likewise implicated. Irrespective of whether or not there has yet to be a ruling on the jurisdictional conflict with the Bexar County court, I would grant in part conditional mandamus relief.

*Standard of Review and Applicable Law*

To obtain mandamus relief, a petitioner must establish two elements: (1) no adequate remedy by law, and (2) a clear abuse of discretion. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992). Because temporary orders in a suit affecting the parent-child relationship are not appealable by law, the first element is met. *See In re Derzapf*, 219 S.W.3d 327, 335 (Tex. 2007) (orig. proceeding) (granting mandamus relief to vacate temporary orders that divest a fit parent of possession of his children); *see also* TEX. FAM. CODE ANN. § 105.001(e) (providing that temporary orders in a suit affecting the parent-child relationship are not subject to interlocutory appeal.). Accordingly, only the second element remained at issue in this dispute. The test for abuse of

discretion is whether the trial court acted without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).

Title 5 of the Family Code governs a suit affecting the parent child relationship (SAPCR) such as the termination/adoption suit filed by the Barringtons. *See* TEX. FAM. CODE ANN. §§ 101.001-266.013; *see also id.* § 101.032 (defining a SAPCR as including a suit requesting the establishment or termination of the parent-child relationship); *Id.* §§ 161.001-161.304 (Termination); *Id.* §§ 162.001-162.702 (Adoption). Within the title, Subtitle A sets forth chapters containing general provisions applicable to all covered suits. *Id.* §§ 101.001-111.003. As applicable here, section 101.001 defines "parent-child relationship" to mean the legal relationship between a child and the child's parents as provided by the Uniform Parentage Act (Chapter 160). *Id.* § 101.025; *see also id*. §§ 160.001-160.763.

Notably, upon the filing of a petition in an original SAPCR, section 102.009 requires service of citation on each parent as to whom the parent-child relationship has not been terminated or process has not been waived under Chapter 161. *See id*. § 102.009(7). The term "parent" includes multiple possibilities. Section 101.024(a) defines "parent" to include "the mother, a man presumed to be the father, a man legally determined to be the father, a man who has been adjudicated to be the father by a court of competent jurisdiction, a man who has acknowledged his paternity under applicable law, or an adoptive mother or father." *Id.* § 101.024(a).

A mother-child relationship is established between a woman and a child by the woman giving birth to the child. *Id.* § 160.201(a)(1). And the relationship of an adoptive mother or father is established by Chapter 162 of the Family Code. *See id.* §§ 162.001-162.702.

Distinctively, however, a variety of definitions may apply or be at issue with regard to the father-child relationship. Relevant to this proceeding, the term "parent" is defined by law to

include a man presumed to be the father. *See id.* § 101.024. A man is presumed to be the father of a child under certain circumstances including that he was married to the mother of the child and the child was born during the marriage. *Id.* § 160.204(a)(1). This presumption of paternity may be rebutted only by an adjudication under Chapter 160, Subchapter G; or the filing of a valid denial of paternity by a presumed father in conjunction with the filing by another person of a valid acknowledgement of paternity as provided by section 160.305. *See id.* § 160.204(b). Ultimately, when the statutory presumption remains unrebutted, the father-child relationship is established. *See id.* § 160.201(b)(1). Contrasted with the presumed relationship of a man married to a child's mother, an "alleged father" means "a man who alleges himself to be, or is alleged to be, the genetic father or a possible genetic father of a child, but whose paternity has not been determined." *Id.* § 101.0015(a). By definition, an "alleged father," does not include a "presumed father." *Id.* § 101.0015(b).

For a covered suit, Title 5 of the Texas Family Code authorizes certain temporary orders. Before rendering a final order, section 105.001 permits a court to make a temporary order, including the modification of a prior temporary order, for the safety and welfare of the child. *Id.* § 105.001. Such temporary order may generally include an order for the temporary conservatorship of the child, for the temporary support of the child, restraining a party from disturbing the peace of the child or another party, prohibiting a person from removing the child beyond a geographical area identified by the court, or for payment of reasonable attorney's fees and expenses. *Id.* § 105.001(a). However, except under circumstances that are not applicable here, a temporary order may *not* be rendered for the temporary conservatorship of the child "except after notice and a hearing." *Id.* § 105.001(b). Indeed, only a governmental entity can obtain a temporary conservatorship order—without notice and an adversary hearing—but only when sought as an

4

emergency order pursuant to Chapter 262. *In re J.A.*, 109 S.W.3d 869, 874 (Tex. App.—Dallas 2003, pet. denied) (citing TEX. FAM. CODE ANN. § 105.001(h)). The notice requirement of section 105.001(b) incorporates requirements of constitutional due process.

The Due Process Clause of the United States Constitution prevents the government from depriving a person of his or her "life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1; *see also* TEX. CONST. art. I, § 19 ("No citizen of this State shall be deprived of life, liberty, property, privileges or immunities . . . except by the due course of the law of the land."). Relevant here, the United States Supreme Court describes the interest of parents in the care, custody, and control of their children as "the oldest of the fundamental liberty interests recognized by [the] Court." *Troxel v. Granville*, 530 U.S. 57, 65 (2000). Affording protection to these interests, the Supreme Court of Texas instructs that due process "require[s] that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mitchell v. MAP Res., Inc.*, No. 21-0124, 2022 WL 1509745, at *5 (Tex. May 13, 2022) (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950)). And when a complete failure of service is shown, such failure "deprives a litigant of due process and a trial court of personal jurisdiction; [such that] the resulting judgment is void and may be challenged at any time." *In re E.R.*, 385 S.W.3d 552, 566 (Tex. 2012).

*Analysis*

Hullaby contends the El Paso County court conferred conservatorship status unlawfully in its April 29 order. Responding, the Barringtons argue the order is valid based on the termination hearing held on March 23, 2021. Based on reviewing the transcript of such hearing, along with the transcript of the hearing held a day before the rendering of the April 29 order, I would conclude

5

the challenged order is void and unenforceable. As such, the record establishes a clear abuse of discretion that supports mandamus relief.

On March 23, 2021, the district court held a hearing set as a termination and adoption hearing. Carl and Barbara Barrington attended with their attorney, while an amicus attorney appeared for the alleged father. Midway through that hearing, new information came to light as provided by Barbara. She described that Gloria Hullaby, the child's birth mother, was an old family friend who had lived with her during a portion of her pregnancy. But contrary to assertions made by the Barrington's termination/adoption petition, Barbara testified that Gloria was a married woman. Barbara further confirmed that she had understood that Gloria's husband "had a vasectomy many years ago or at least several years ago."

The amicus attorney soon noted there was an absence of issuance of citation on the presumed father, the husband of Gloria. He disclosed that he and counsel for the Barringtons previously discussed the issue. The trial court then asked whether counsel for the Barringtons would "go ahead and proceed with whatever due process issues exist with the presumed father?" Counsel assured he would make note of the absence of the presumed father in any resulting order. The district court then indicated it would issue an interlocutory order, not a final adjudication. Barbara Barrington then testified that, "in the meantime," she was asking for the court to name her a managing conservator of A.D.B. Before concluding, the district court issued oral pronouncements from the bench. Relative to this proceeding, the written order signed March 24, which followed the hearing, included a single line stating: "Issues regarding the presumed father will be addressed at a later time by this Court." Notably, however, the written order made no mention of the status of the Barringtons, except to refer to them as the petitioners of the suit who had both appeared and announced ready for trial.

6

Advancing forward, the mandamus record also includes a transcript of a motions hearing held in the El Paso County district court on April 28, 2022, which addressed fees owed to the amicus attorney. The hearing occurred after Kenneth Hullaby had filed an overlapping divorce/SAPCR in Bexar County that named A.D.B. as a child subject of the suit. During a colloquy between Hullaby's counsel and the district court, counsel objected to references being made to the Barringtons as "necessary parties" of the suit he had by then filed in Bexar County. The district court noted the Barringtons were named "sole managing conservators under an existing Order[,]" in the El Paso County suit. Counsel replied, "What Order is that?" Reading directly from a transcript of the earlier hearing held on March 23, 2021, the district court quoted from its oral pronouncements wherein the court had stated, "I will appoint the Barringtons as the sole managing conservators of the minor child with all the rights and duties afforded to that." Further responding, the district court also pointed out that the Barringtons were parties with actual care, control, and possession of the child, "even if they weren't sole managing[.]" Although the jurisdictional conflict was tangentially discussed, the district court indicated it would make no ruling on the conflict until a conference was first arranged with the Bexar County judge.

The next day, however, the El Paso County district court followed the fees hearing by rendering the April 29 order titled, "Order Appointing Managing Conservators of a Child." As indicated on its face, the April 29 order was not based on the hearing held the day before, but on the hearing held over a year earlier, on March 23, 2021. As discussed earlier, the record of that hearing shows there was no dispute between the parties, and they all recognized at the time, that Hullaby had not yet been served with process or given notice of the hearing held on that occasion.

I would conclude the record establishes there was a complete failure of service at the point in the proceedings when the district court conducted the hearing of March 23. Because the order

of April 29 was based solely on that hearing, however, I would further conclude the record here establishes the challenged order stems from a hearing in which Hullaby was deprived of his due process rights and the district court exceeded its lawful authority. *See In re E.R.*, 385 S.W.3d at 566; *see also Troxel*, 530 U.S. at 65; *see also* TEX. FAM. CODE ANN. §§ 101.024, 102.009 (7), 105.001(b), 160.204 (a)(1). To that end, I would conclude the unlawful order of April 29 is void and unenforceable in its entirety.

As the record shows, there is no involvement of a governmental entity in the underlying suit. Instead, the Barringtons filed their termination/adoption as non-parents, seeking to originally establish a parent-child relationship with an unborn child that was purportedly relinquished to them by Gloria. Without issue, a suit of that nature may be filed by persons who have been named as prospective adoptive parents "by a pregnant woman." *See id.* §§ 102.003(a)(1), (14). And here, the Barringtons gave notice of the filing of an affidavit of relinquishment of parental rights by A.D.B.'s birth mother, and the affidavit included her naming of them as prospective adoptive parents. Gloria's affidavit further averred that A.D.B. had no presumed father and she did not know the identity or location of the child's father. On review of the record, it is understandable that it initially appeared that only an alleged father would be at issue. Nonetheless, the record also establishes that the Barringtons knew of Gloria's marital status well before the filing of their suit.

The obligation to give notice of a pending termination/adoption proceeding applies to a presumed father. *See id.* §§ 102.009, 105.001(b). And there is no dispute that such notice had not been provided to Kenneth Hullaby as of the hearing held on March 23, 2021. At that point, the record shows that Gloria had voluntarily surrendered care and custody of A.D.B. to the Barringtons and she had seemingly named them as prospective adoptive parents. But contrary to procedural requirements of the Family Code, and in violation of due process rights of a recognized parent, the

8

district court proceeded with naming the Barringtons as temporary conservators without notice and hearing afforded to a presumed parent and necessary party. *Id.* §§ 102.009, 105.001(b); *Troxel*, 530 U.S. at 65; *see also* TEX. R. CIV. P. 39(a) (providing that a person who is subject to service of process "shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest. . . ."). Also, the record shows the district court only named the Barringtons as temporary conservators, not by a written order rendered the day following the March 2021 hearing, but rather, by the order signed on April 29, after Hullaby had appeared in the suit and asserted his paternity through his pleadings and argument.

In their response to the petition for mandamus, the Barringtons essentially reach the same conclusion as stated here regarding notice to necessary parties, raising the issue not about the proceedings held in El Paso County but as to those in Bexar County. They argue similarly that they were entitled to notice of those proceedings based on their actual possession of the child and their purported status as temporary conservators. Without weighing in on the Bexar County suit, I simply emphasize that the Barringtons seemingly recognize and concede by their argument that obligations do exist to give notice to necessary parties. In my view, that obligation fully applied to this suit.

In sum, I conclude the April 29 order is void and unenforceable irrespective of the jurisdictional conflict which has yet to be ruled upon by the district court. Because each parent of a child is entitled to service of process upon the filing of a SAPCR, and a presumed father is regarded by definition as being such a parent, and because a district court is not permitted to issue a *temporary* order affecting the conservatorship of a child except after notice and a hearing, I would

conclude the record establishes that the district court committed a clear abuse of discretion by rendering the order of April 29. *See* TEX. FAM. CODE ANN. §§ 102.009, 105.001(b); *see also Walker,* 827 S.W.2d at 840. Thus, I would conditionally grant mandamus relief in part.

GINA M. PALAFOX, Justice

June 28, 2022

Before Rodriguez, C.J., Palafox, and Alley, JJ.